# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JUANICCA WEDGEWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-00266-SGC |
| | ) | |
| DENIS MCDONOUGH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER[1]

This is an employment discrimination case. The plaintiff, Juanicca Wedgeworth, asserts claims for violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"), against Denis McDonough, the Secretary of Veterans Affairs. (Doc. 5).[2] More specifically, she claims the defendant failed to accommodate, and then terminated her employment because of, her disability.[3] The case is before the court on the defendant's motion for summary

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

[3] The defendant construes the amended complaint as asserting claims under both the Rehabilitation Act and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). (Doc. 42 at 14-15). The court construes the amended complaint as asserting claims under only the Rehabilitation Act. However, the court notes that, if the plaintiff had asserted claims under the ADA, the claims would fail. The ADA prohibits private employers with more than 15 employees and state and local governments from discriminating against an employee on the basis of her disability, *see* 42 U.S.C. §§ 12111(2) and (5), 12112(a), 12131(1), 12132, while the Rehabilitation

judgment.  (Doc. 42).  The parties have briefed the motion fully, and it is ripe for review.  (Docs. 42, 44, 47).  For the reasons stated below, the court will deny the motion as to the plaintiff's failure to accommodate claim, but the court will grant the motion as to the plaintiff's discriminatory discharge claim and dismiss that claim with prejudice.

## I.     Standard of Review

Under Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go

---

Act prohibits such discrimination by federal executive branch agencies and recipients of federal financial assistance, *see* 29 U.S.C. § 794(a).  An employee of a federal agency, such as the U.S. Department of Veterans Affairs, may assert a claim for disability discrimination under the Rehabilitation Act but not the ADA.  *See Lymore v. Cooke*, 2022 WL 45051, at *2 (M.D. Fla. Jan. 5, 2022); *Moseley v. Boente*, 2017 WL 476278, at *1 (S.D. Ga. Feb. 6, 2017); *Brown v. Henderson*, 2000 WL 362035, at *1 (S.D. Ala. Mar. 16, 2000).  The court has explained this to the plaintiff in a prior order.  (Doc. 4 at 4).

beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## II.    Summary Judgment Facts[4]

The plaintiff is a licensed social worker. (Doc. 43-2 at 4). The defendant hired the plaintiff on September 15, 2019, to be a social worker in the Emergency Department at the West Campus of the Central Alabama Veterans Health Care System Medical Center in Montgomery, Alabama (the "VA emergency department"). (Doc. 43-1 at 1). A social worker in the VA emergency department assesses psychosocial problems of veterans presenting for treatment and connects them with services that meet their needs. (Doc. 43-4 at 2-4). The plaintiff's

---

[4] The following facts are undisputed, unless otherwise noted. The court views the facts in the light most favorable to the plaintiff, as the non-movant, and gives the plaintiff the benefit of all reasonable inferences.

scheduled "tour of duty" was Thursday through Saturday, 7:00 A.M. to 7:30 P.M., and every other Sunday, 8:00 A.M. to 4:30 P.M.  (Doc. 43-7 at 1).  The plaintiff commuted to the VA emergency department in Montgomery from her home in Birmingham, Alabama.  (Doc. 43-2 at 8).  To retain her position, the plaintiff was required to complete a one-year trial period (also described as a "probationary period") successfully.  (Doc. 43-1 at 1).

In January 2020, the plaintiff began a pattern of "calling out" at the start of her work week.  (Doc. 43-5 at 2).  Beginning in April 2020, the plaintiff's direct supervisor (Carrietta Pritchett-Stallworth) had multiple conversations with the plaintiff about her attendance deficiencies.  (Doc. 43-5 at 2).  Pritchett-Stallworth also provided written counseling to the plaintiff about her absences in memoranda dated April 30, 2020, and July 31, 2020.  (Doc. 43-5 at 2-3; Doc. 7; Doc. 8).

The plaintiff responded to the July 31, 2020 memorandum by disclosing in writing diagnoses of anxiety and depression and explaining the conditions had been triggered or exacerbated by the COVID-19 pandemic and several deaths in her family.  (Doc. 43-9 at 2).  When deposed in connection with this case, the plaintiff explained in greater detail how her anxiety and depression affect her.  She testified they make it difficult to get out of bed and tend to her personal hygiene and cause her to experience preoccupations that hinder her ability to focus and communicate with others, all of which in turn impede her ability to work.  (Doc. 43-2 at 25-26,

35).

The plaintiff requested in her response to Pritchett-Stallworth's July 31, 2020 memorandum a telework tour of duty for the duration of the pandemic, explaining she believed that by teleworking she could eliminate the stress of commuting and "uncertainties" associated with working in a healthcare setting during a global pandemic.  (Doc. 43-9 at 2-3; *see also* Doc. 43-2 at 41).  She proposed she could maintain communication with managers and co-workers from home using her VA-issued cell phone and a VA-issued laptop and perform veteran psychosocial assessments by videoconference.  (Doc. 43-9 at 3).  In her deposition, the plaintiff insisted she could have performed all aspects of her job from her home in Birmingham using these technologies.  (Doc. 43-2 at 33, 41).

Pritchett-Stallworth replied that VA emergency department social workers are not eligible for telework.  (Doc. 43-5 at 4).  An electronic timesheet summary for the plaintiff includes the code "Telework Eligible Flag: F," which counsel for the defendant asserts is evidence corroborating Pritchett-Stallworth's statement.  (Doc. 42 at 6; Doc. 43-12 at 4).  Counsel for the defendant also asserts a Veterans Health Administration directive setting out policy for VA medical facility emergency departments requires them to have a social worker on site 24 hours a day, 7 days a week.  (Doc. 42 at 6).  To be more precise, the directive requires each emergency

department to have "on-site or on-call access to social work services . . . 24 hours a day, 7 days a week."  (Doc. 42-13 at 17).

By the end of August 2020, the plaintiff had used 308 hours of leave, excluding leave she took when she became infected with COVID-19.  (Doc. 43-5 at 4; Doc. 43-6).  Due to the plaintiff's absences during her probationary period, Pritchett-Stallworth recommended the plaintiff's employment be terminated.  (Doc. 43-5 at 4).  The plaintiff was issued a termination letter on September 10, 2020. (Doc. 43-16).

The plaintiff sought an administrative remedy for alleged disability discrimination shortly after the termination of her employment.  After an administrative law judge entered summary judgment in favor of the defendant, the plaintiff commenced this action.  (Docs. 1; 5; 10-1; 43-17; 43-18).

## III.  Discussion

As stated, the Rehabilitation Act prohibits federal executive branch agencies, such as the U.S. Department of Veterans Affairs, and recipients of federal financial assistance from discriminating against disabled employees.  A plaintiff establishes a *prima facie* case of disability discrimination under the Rehabilitation Act by showing (1) she has a disability, (2) she is a "qualified individual," meaning she can perform the "essential functions" of her job without accommodation or, failing that, with a reasonable accommodation, and (3) her employer discriminated against her

"solely by reason of her [] disability." 29 U.S.C. § 794(a); 42 U.S.C. § 12111(8); *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).[5] A plaintiff may satisfy the third prong of a *prima facie* case of disability discrimination by showing either that her employer failed to provide a reasonable accommodation for her disability or that her employer subjected her to an adverse employment action, such as discharge, because of her disability. *Boyle*, 866 F.3d at 1289.

### A.    Disability Prong

To prove she has a disability within the meaning of the Rehabilitation Act, a plaintiff must show (1) she has "a physical or mental impairment that substantially limits one or more major life activities"; (2) she has a record of such an impairment; or (3) she is "regarded as" having such an impairment, meaning her employer perceives her as having such an impairment even if she does not actually have such an impairment. 42 U.S.C. § 12102(1); *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1216 (11th Cir. 2021).

---

[5] Discrimination claims proceeding under the Rehabilitation Act largely are governed by the same standards as discrimination claims proceeding under the ADA, and cases decided under the ADA are precedent for cases decided under the Rehabilitation Act. *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000); *Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1321-22 (11th Cir. 2021). One notable exception is that the Rehabilitation Act requires that a plaintiff's disability be the "sole[]" reason for the discrimination, whereas the ADA requires only a lesser "but for" standard of causation. § 794(a); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

Anxiety and depression are mental impairments within the meaning of the Rehabilitation Act. *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir. 1996) (depression), *amended in part on reh'g*, 102 F.3d 1118 (11th Cir. 1996); *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 391 (E.D.N.Y. 2016) (anxiety and depression). Each constitutes a disability within the meaning of the Rehabilitation Act if it substantially limits one or more major life activities, 42 U.S.C. § 12102(1), defined to include, as relevant here, "caring for oneself . . . concentrating, thinking, communicating, and working," 42 U.S.C. § 12102(2)(A).

"[E]xtensive analysis is not required to determine whether an individual's impairment is a disability under the [Rehabilitation Act]." *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016). " 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(i).[6] "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." § 1630.2(j)(ii). Moreover, "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." § 12102(4)(D). "[Eleventh Circuit] precedent requires that a plaintiff's evidence of disability include the timing, frequency, and duration of [her] impairments to survive summary judgment." *Sugg*

---

[6] Courts, including the Eleventh Circuit, frequently refer to administrative regulations to assess whether an impairment substantially limits a major life activity. *Hilburn v. Murata Elecs. N. Am., Inc.*, 1220, 1226 (11th Cir. 1999).

*v. City of Sunrise*, 2022 WL 4296992, at *8 (11th Cir. Sept. 19, 2022) (citing *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1273-74 (11th Cir. 2020); *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1180 (11th Cir. 2019)).

The defendant argues the plaintiff cannot prove her anxiety and depression substantially limit a major life activity, directing the court to evidence he contends shows the plaintiff is able to work and engage in activities outside of work. (Doc. 42 at 20-23). The defendant has mischaracterized some of this evidence or, at least, omitted context critical to a fair reading of the evidence.[7,8] Regardless, for purposes of a disability discrimination claim, the question is not whether the plaintiff has a disability that precludes her from working but, rather, whether the plaintiff has a disability that substantially limits a major life activity, such as working. Some of

---

[7] The defendant asserts the plaintiff testified during the administrative proceedings that she is able to engage in normal life activities outside of work. (Doc. 42 at 20-21). When asked whether she was able to engage in normal life activities outside of work, the plaintiff testified, "Yes, just not so much right now. And like I said this started – or my anxiety increased in 2020. So, I haven't really done much outside of you know – trying to take care from (sic) work since the pandemic. So, it's kind of limited a little bit more right now." (Doc. 43-3 at 8-9).

[8] The defendant asserts the plaintiff testified when deposed that she is able to work. (Doc. 47 at 4). When asked whether she considered herself disabled for employment purposes, the plaintiff responded:

> For employment purposes, I am able to work. Normally, it just depends on the circumstances. It depends on – and it's a mental health disability; so its not something that – it's something that's present and can be managed. However, there are triggers with most mental health disabilities. So, you know, it depends on what situation is in that particular person's life, what the triggers are that will affect their day-to-day movement, mobility, employment, and doing those things accurately and efficiently.

(Doc. 43-2 at 25).

the evidence the defendant fairly characterizes as showing the plaintiff is able to work is of limited utility, if any, to the defendant's argument because the mere fact she is able to work, standing alone, does not necessarily show the plaintiff's ability to work is without substantial limitation. Finally, and most importantly for purposes of the pending motion, insofar as the evidence the defendant cites does tend to show the plaintiff's major life activities are not substantially limited by her anxiety and depression, the evidence does not entitle the defendant to summary judgment on the disability prong of the plaintiff's *prima facie case* because there is other evidence tending to show the contrary.

That evidence is the plaintiff's response to Pritchett-Stallworth's July 31, 2020 memorandum and her deposition testimony in this case, in which the plaintiff asserts she experiences episodes of anxiety and depression and that the episode she experienced in 2020 was triggered or exacerbated by the COVID-19 pandemic. The plaintiff testified her anxiety and depression affect her ability to care for herself, insofar as they make it difficult to get out of bed and tend to her personal hygiene, and hinder her ability to focus and communicate with others, insofar as she experiences preoccupations secondary to her mental illness. (Doc. 43-2 at 25-26, 35). Insofar as getting out of bed was an obvious prerequisite to the plaintiff's commute from Birmingham to Montgomery and presence in the VA emergency department, tending to basic personal hygiene is necessary to present as appropriate

in the workplace, and focusing and communicating with others are requirements of any job, a reasonable inference is that the limitations imposed on the plaintiff by her anxiety and depression compromised the performance of her job functions as a VA emergency department social worker. Additional evidence of the impact of the plaintiff's anxiety and depression on her ability to work includes the 308 hours of leave she used over the course of the single year she worked at the VA emergency department. (See Doc. 43-5 at 4; Doc. 43-6).[9] That evidence also speaks to the frequency with which the plaintiff experienced impairing levels of anxiety and depression during her 2020 episode, and the fact that the plaintiff requested an accommodation for her mental illness for the duration of the pandemic permits the inference she expected her symptoms to last for that duration. A reasonable jury could find, based on this evidence, that the plaintiff's anxiety and depression substantially limit her ability to work.[10]

---

[9] The defendant asserts that in *Hilburn* the Eleventh Circuit held absences totaling approximately 100 days between 1989 and 1992 did not demonstrate a substantial limitation on the plaintiff's major life activity of working. (Doc. 47 at 4). A more complete statement would be that the appeals court held the absences, the first period of which were accrued when the plaintiff suffered a heart attack, did not demonstrate a substantial limitation on the plaintiff's ability to work because the plaintiff had not connected the absences to any residual effects of her heart problems. *See Hilburn*, 181 F.3d at 1229. The plaintiff here has connected her absences to her anxiety and depression. Therefore, *Hilburn* is inapposite.

[10] In addition to challenging the plaintiff's ability to show she has a physical or mental impairment that substantially limits one or more life activities, the defendant challenges the plaintiff's ability to prove disability under the "record of impairment" or "regarded as" prongs of the definition. Having concluded there is sufficient evidence for the plaintiff's claims to survive summary judgment on the issue of whether she has a physical or mental impairment that substantially limits

### B.     Qualified Individual Prong

As stated, to prove she is a qualified individual, a plaintiff must show she can perform the essential functions of her job without accommodation or, failing that, with a reasonable accommodation.  An accommodation, in turn, is reasonable only if it enables an employee to perform the essential functions of her job.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007).  This is another way of saying the Rehabilitation Act does not require an employer to eliminate an essential function of an employee's job to accommodate the employee's disability.  *Id.*

"Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis."  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001).  A court may consider an employer's judgment as to whether a function is essential, a written description of the job, the amount of time spent on the job performing the function, the consequences of not requiring the employee to perform the function, the terms of a collective bargaining agreement, the work experience of past employees in the position, and the current work experience of employees in similar positions.  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3); *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 865-66 (11th

---

one or more life activities, the court declines to consider whether the plaintiff can prove disability under the "record of impairment" or "regarded as" prongs.

Cir. 2017).

An employer's judgment as to whether a function is essential is entitled to "substantial weight" but is not "conclusive" of the matter. *Holly*, 492 F.3d at 1258 (internal quotation marks omitted and alteration adopted). Relatedly, while a job description is a relevant factor in the essential function analysis, " 'an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.'" *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) (quoting *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (9th Cir. 2000), *rev'd on other grounds*, 536 U.S. 73 (2002)). If an employer's judgment was conclusive or its job description beyond question, "an employer that did not wish to be *inconvenienced* by making a reasonable accommodation could, simply by asserting that the function is 'essential,' avoid the clear [] mandate [of the Rehabilitation Act]." *Holly*, 492 F.3d at 1258. An employer's judgment as to whether a function is essential, or its job description identifying a function as essential, may be successfully challenged by evidence the function is not " 'job-related, uniformly enforced, or consistent with business necessity.'" *Brown v. Austin*, 13 F.4th 1079, 1086 (10th Cir. 2021) (quoting *Mason v. Avaya Comms., Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004)) (alteration adopted).

The plaintiff here proposed one accommodation: that she be allowed to

telework.[11],[12]    The defendant argues the proposed accommodation was not reasonable because in-person presence in the VA emergency department is an essential component of the job of a VA emergency department social worker. (Doc. 42 at 25-30).   The defendant cites Pritchett-Stallworth's affidavit testimony, the plaintiff's electronic timesheet summary, and the Veterans Health Administrative directive setting out policy for VA medical facility emergency departments in support of the argument. (Doc. 42 at 27).   The court is not persuaded the defendant's evidence shows in-person presence at the VA emergency department is an essential component of the job of a VA emergency department social worker.

Counsel for the defendant asserts in the defendant's summary judgment motion that the Veterans Health Administration directive setting out policy for VA medical facility emergency departments "specifically mandates that a [VA

---

[11] The defendant asserts the plaintiff requested permission to telework not because of her anxiety and depression but, rather, pursuant to a work-from-home policy implemented in connection with the COVID-19 pandemic. (Doc. 47 at 8-9).   A fair characterization of the plaintiff's testimony would be that she sought permission to telework under the COVID-19-era work-from-home policy because of her anxiety and depression, which were triggered or exacerbated by the pandemic. (Doc. 43-2 at 31-32).

[12] The plaintiff asserts for the first time in her response to the defendant's summary judgment motion that in addition to requesting permission to telework, she "inquired about shift rotation." (Doc. 44 at 1).   The court will not consider shift rotation as a second accommodation proposed by the plaintiff.  *See Gilmour v. Gates, McDonald and Co.*, 482 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Mitchell v. Pilgrim's Pride Corp.*, 817 F. App'x 701, 708 (11th Cir. 2020) (holding district court did not err in refusing to consider allegations made for first time in response to summary judgment motion because such response "can't be used as a backdoor and unauthorized attempt to amend [a] complaint.").

emergency department] social worker be 'on-site.'" (Doc. 42 at 27). That characterization of the mandate is incomplete, at best. The directive requires every VA emergency department to have "on-site or on-call access to social work services." (Doc. 42-13 at 17). Inclusion of the phrase "on-call access" suggests the possibility that access to a social worker via telephone, e-mail, or videoconference could satisfy the requirements of the directive.

As stated, the plaintiff's electronic timesheet includes the code "Telework Eligible Flag: F." (Doc. 43-12 at 4). The only explanation for the meaning of the code is the assertion made by counsel for the defendant in the defendant's summary judgment motion that the code means the plaintiff's position was not eligible for telework. (Doc. 42 at 6). However, an assertion made by counsel in a motion is not evidence. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). The assertion made by counsel here is not accompanied by any evidence as to the meaning of the code, and the court is unwilling to assign meaning to the code absent such evidence.

More to the point, the fact that a job is ineligible for telework does not necessarily mean in-person presence at the job site is an essential function of the job, as the term essential function is used in the Rehabilitation Act. An employer could designate a job as ineligible for telework simply because allowing an employee in the position to telework would inconvenience the employer. Even assuming the

code on the plaintiff's electronic timesheet indicates the VA emergency department social worker position is not eligible for telework, it says nothing of the reason why. The same is true of Pritchett-Stallworth's affidavit testimony.  Pritchett-Stallworth attested she told the plaintiff that VA emergency department social workers are not eligible for telework, but she did not explain why VA emergency department social workers are not eligible for telework and, more specifically, whether the ineligibility is related to a function of the social worker position or service need of the VA emergency department.  (*See* Doc. 43-5 at 4).  The defendant essentially asks the court to infer from the ineligibility of a VA emergency department social worker for telework that in-person presence at the VA emergency department is an essential component of the job of a social worker in the department.  The court cannot make the inference because it is not the only reasonable inference available.  *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("[I]f a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment. Rather, the court must hold a trial to get to the bottom of the matter.") (internal citation omitted).

In sum, the evidence submitted by the defendant does not demonstrate the absence of a genuine dispute of material fact regarding the essential nature of a VA emergency department social worker's in-person presence in the VA emergency

department or, in turn, whether the plaintiff's proposed accommodation that she be allowed to telework was reasonable. The failure of the defendant, as the moving party, to make this showing is a sufficient basis on which to deny the defendant's summary judgment motion on the second element of a failure-to-accommodate claim. The non-moving party must come forward with evidence to support an element of her claim challenged by the moving party *only* if the moving party carries its initial burden. *Celotex Corp.*, 477 U.S. at 324.

Nonetheless, the court notes the record contains evidence that would support a determination in-person presence at the VA emergency department is not essential to the job of a social worker assigned to the department and that allowing the plaintiff to telework would have enabled the plaintiff to perform her job. That evidence is the telework proposal the plaintiff submitted to Pritchett-Stallworth and the plaintiff's deposition testimony. The plaintiff proposed she could maintain communication with managers and co-workers from home using her VA-issued cell phone and a VA-issued laptop and perform veteran psychosocial assessments by videoconference. (Doc. 43-9 at 3).[13]  She testified she could have performed all

---

[13] The defendant argues the plaintiff could not perform these aspects of her job outside the VA emergency department. (Doc. 42 at 27-28). He marshals no evidence to support the argument and seems to believe the "very nature" of the job functions makes it obvious they had to be performed on site. (*See* Doc. 42 at 27-28). The court does not believe the nature of the plaintiff's job responsibilities, standing alone, demonstrates the absence of a genuine issue of fact as to whether the plaintiff could fulfill the responsibilities anywhere other than on site in the VA emergency department. Even if the nature of the responsibilities constitutes some evidence of an on-site

aspects of her job from her home in Birmingham using these technologies. (Doc. 43-2 at 33, 41). Finally, she explained allowing her to telework would help her do her job, insofar as it would eliminate the stress of commuting and "uncertainties" associated with working in a healthcare setting during a global pandemic. (Doc. 43-2 at 41; Doc. 43-9 at 3).

The court acknowledges the plaintiff's evidence is, in large part, self-serving. Some courts have held in the context of disability discrimination claims that an employee's self-serving testimony is insufficient to create a genuine issue of material fact on summary judgment in light of an employer's "overwhelming evidence" to the contrary. *See, e.g., Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000). This holding is of no consequence here. As discussed, the defendant has failed to come forward with evidence, let alone overwhelming evidence, in-person presence in the VA emergency department is an essential component of the job of a social worker assigned to the department. Regardless, the general rule in the Eleventh Circuit is that self-serving testimony can create a genuine dispute of material fact that defeats summary judgment. *See, e.g., United States v. Stein*, 881 F.3d 853, 857-58 (11th Cir. 2018).

---

presence requirement, there is evidence to the contrary (discussed above), thereby creating a genuine issue of material fact for trial.

### C.    Discrimination Prong

#### 1.    Failure to Accommodate

Failure to provide a disabled employee with a reasonable accommodation constitutes discrimination under the Rehabilitation Act, unless the accommodation would impose an undue hardship on the employer.  *Holly*, 492 F.3d at 1262.  An employer has the burden of showing an accommodation would impose an undue hardship on it.  *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 (11th Cir. 1997).  As discussed above, there remains a genuine dispute of material fact as to whether the plaintiff's proposed accommodation that she be allowed to telework was reasonable.  The defendant limited its argument to the reasonableness of the proposed accommodation and did not attempt to show it would impose an undue hardship on the VA emergency department.[14]  The court will deny the defendant's summary judgment motion as to the plaintiff's failure to accommodate claim.  This claim survives.

#### 2.    Discriminatory Discharge

Disparate treatment occurs when a disabled employee "is singled out for disadvantage because of her disability."  *Forbes v. St. Thomas Univ., Inc.*, 768 F.

---

[14] The defendant argues the plaintiff cannot satisfy the third prong of her failure to accommodate claim because she was discharged because of her unacceptable attendance record during her probationary period, not because of her anxiety or depression.  (Doc. 42 at 30).  This argument goes to the plaintiff's ability to make out a claim for discriminatory discharge, not the plaintiff's ability to make out a failure to accommodate claim.

Supp. 2d 1222, 1227 (S.D. Fla. 2010).  Courts often evaluate this type of disability

discrimination claim using the framework set out in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  *Center v. Sec'y, Dep't of Homeland Sec., Customs and*

*Border Protection Agency*, 895 F.3d 1295, 1303 (11th Cir. 2018).[15]  This framework

requires that, after a plaintiff establishes a *prima facie* case, the burden shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the adverse

employment action at issue.  *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d

1189, 1193 (11th Cir. 2004).  The burden is one of production, not persuasion.  *Id.*

The defendant need not persuade the court it actually was motivated by the reason

articulated.  *Id.*  If the defendant articulates a legitimate, non-discriminatory reason

for the adverse employment action, the burden returns to the plaintiff to show the

proffered reason is a pretext for discrimination.  *Id.*; *Phillips v. Legacy Cabinets*, 87

F.4th 1313, 1321 (11th Cir. 2023).  A reason is not a pretext for discrimination unless

it is shown both that the reason is false and that discrimination was the real reason.

---

[15] The *McDonnell Douglas* burden-shifting framework applies only where, as here, a plaintiff relies on circumstantial, as opposed direct, evidence to establish her claim.  Moreover, the *McDonnell Douglas* burden-shifting framework "is not the *sine qua non*" for a plaintiff to survive summary judgment in relation to a discrimination claim based on circumstantial evidence.  *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).  "Instead, 'the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'"  *Id.* (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Id.* (quoting *Smith*, 644 F.3d at 1328).

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018).

The defendant asserts the plaintiff's employment was terminated because of her unacceptable attendance record during her probationary period. (Doc. 42 at 31; Doc. 43-5 at 4; Doc. 43-16).    An employee's absences, including (perhaps, especially) those accrued during a probationary period, constitute a legitimate, non-discriminatory reason for discharging the employee. *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1352-53 (11th Cir. 2022); *Hunter v. Mobis Ala., LLC*, 559 F. Supp. 2d 1247, 1258 (M.D. Ala. 2008).    The plaintiff has failed to show the reason is pretext for discrimination.[16]

The plaintiff claims in her response to the defendant's summary judgment motion that Pritchett-Stallworth never warned her that her absences could result in the termination of her employment. (Doc. 44 at 1).    Although the failure to warn an employee of poor performance when poor performance is the articulated reason for the employee's discharge may indicate pretext, it is not sufficient to defeat summary judgment standing alone. *Almond v. City of Canton, Ga.*, 2006 WL 8432780, at *18 (N.D. Ga. Dec. 5, 2006) (collecting cases), *report and recommendation adopted*, 2007 WL 9701438 (N.D. Ga. Jan. 18, 2007).    Here, the alleged failure to warn stands

---

[16] Moreover, the record lacks a "convincing mosaic" of circumstantial evidence that would permit a reasonable inference of intentional discrimination outside the *McDonnell Douglas* framework.

alone.  The court notes the plaintiff also claims in her response to the defendant's summary judgment motion that the defendant failed to follow policies and procedures.  (Doc. 44 at 3).  Because the plaintiff does not articulate what those policies and procedures were or how she contends the defendant failed to follow them, let alone point to evidence supporting the assertion, the assertion neither buttresses the plaintiff's claim the defendant failed to warn her that her absences could result in the termination of her employment nor suggests pretext in and of itself.  *See Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 448 F. App'x 17, 19 (11th Cir. 2011) ("A plaintiff cannot defeat summary judgment by relying upon conclusory assertions.").  The court will grant the defendant's summary judgment motion as to the plaintiff's discriminatory discharge claim and dismiss this claim with prejudice.

## IV.    Conclusion

For the reasons stated above, the court **DENIES** the defendant's summary judgment motion (Doc. 42) as to the plaintiff's failure to accommodate claim. However, the court **GRANTS** the defendant's summary judgment (Doc. 42) as to the plaintiff's discriminatory discharge claim and **DISMISSES** that claim **WITH PREJUDICE**.

**DONE** this 7th day of March, 2025.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE